IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

REBECCA HAMRICK                                                    PLAINTIFF


               v.                        CIVIL NO. 16-5081


NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                          DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Rebecca Hamrick, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.       **Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on November 5, 2013, alleging an inability to work since June 2, 2011, due to chronic back pain, left arm

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

problems, high blood pressure, insomnia and incontinence. (Doc. 7, pp. 82, 185, 192). An administrative video hearing was held on October 8, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 7, pp. 33-78).

By written decision dated December 12, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Doc. 7, p. 19). Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, and status post open reduction internal fixation of the left arm. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 7, p. 21). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb, crawl, kneel, stoop, crouch and perform overhead work.

(Doc. 7, p. 21). With the help of a vocational expert, the ALJ determined Plaintiff could perform her past relevant work as a cosmetologist. (Doc. 7, p. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on March 15, 2016. (Doc. 7, p. 5). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

2

At the time of the administrative hearing on October 8, 2014, Plaintiff was fifty-four years of age and had obtained a ninth grade education. (Doc. 7, pp. 36, 39). Plaintiff testified that she had earned her GED and had gone to cosmetology school and maintained a current cosmetology license. At the time of the hearing, Plaintiff testified that she was working about four hours a day and had to turn work away due to arm and back pain. (Doc. 7, p. 44).

A review of the pertinent medical evidence reflects the following. On June 1, 2011, Plaintiff was admitted into Washington Regional Medical Center with a left forearm deformity and pain. (Doc. 7, pp. 324-327, 356-368). Treatment notes revealed that Plaintiff, who was inebriated, was pushed over by a dog and fell on her arm. Plaintiff indicated that she smoked and drank alcohol daily. Dr. Andrew D. Heinzelmann diagnosed Plaintiff with an open left forearm both bone shaft fracture. Upon her consent, Plaintiff underwent an internal open reduction and internal fixation of the left forearm.

On June 4, 2011, Plaintiff entered the Washington Regional Medical Center emergency room with complaints of pain in the left arm. (Doc. 7, pp. 350-355). Plaintiff reported that she developed bruising and pain in her upper left arm and was concerned about a blood clot. A Doppler Study was negative for deep vein thrombosis. Plaintiff was diagnosed with an arm contusion and an allergic reaction to a drug.

On June 13, 2011, Plaintiff was seen for a follow-up appointment for her left arm. (Doc. 7, p. 323). Plaintiff reported that she had been doing okay. Dr. Heinzelmann recommended that Plaintiff use her arm and to gently work on range of motion. Plaintiff was instructed to return in one month.

3

On July 12, 2011, Plaintiff had a follow-up appointment with Dr. Heinzelmann for her left arm. (Doc. 7, p. 322). Plaintiff reported that she had been doing well and was improving. Upon examination, Dr. Heinzelmann noted that Plaintiff's incisions had healed and her range of motion was improving. Plaintiff was instructed to continue working on range of motion of the wrist and elbow. Dr. Heinzelmann opined that Plaintiff could return to work as tolerated. Plaintiff was encouraged to take Tylenol or pain medicine but not both together.

On August 10, 2011, Plaintiff complained of left shoulder pain for the past three weeks. (Doc. 7, pp. 405-406). Upon examination, Plaintiff did not have impingement signs but did have tenderness over the left AC joint and elbow.

On August 28, 2011, Plaintiff entered the Washington Regional Medical Center emergency room with complaints of a toothache and facial swelling. (Doc. 7, pp. 344-349). Plaintiff was diagnosed with a dental abscess and treated with medication.

On August 30, 2011, Plaintiff entered the Washington Regional Medical Center emergency room complaining of right facial swelling and a tooth ache. (Doc. 7, pp. 328-343). Treatment notes indicated this was the second visit with this complaint. Upon examination, Plaintiff was noted to appear pain free and had a normal gait. Plaintiff underwent a CT of the face that revealed soft tissue stranding most compatible with cellulitis, dental caries of the right lower second bicuspid tooth, and maxillary sinus disease. Plaintiff was diagnosed with cellulitis of the face and a dental abscess.

On October 5, 2011, Plaintiff was seen for a follow-up appointment. (Doc. 7, pp. 401-402). Plaintiff was noted to have a normal gait. Plaintiff was diagnosed with hypertension, hyperlipidemia and tobacco abuse. Plaintiff was to return for a follow-up in six months.

On October 11, 2011, Plaintiff was seen at the Northwest Arkansas Free Health Center for treatment for two skin tags on her upper left thigh.  (Doc. 7, pp. 399-400).

On April 4, 2012, Plaintiff complained of an itchy scalp.  (Doc. 7, pp. 397-398). Plaintiff was treated with a shampoo.

On May 1, 2012, Plaintiff complained of sinus pressure and that her ears were popping. (Doc. 7, pp. 395-396).   Plaintiff was diagnosed with an upper respiratory infection and sinusitis.

On September 5, 2012, Plaintiff was seen by Kirk Johnson, D. C., for acute severe lower thoracic/upper lumbar pain and lumbo-sacral pain.  (Doc. 7, p. 383).  Plaintiff reported that her pain was the most intense when standing upright and that she was a hairstylist which required prolonged periods of standing. Dr. Johnson noted that Plaintiff's range of motion was impaired especially with extension, lateral bending and rotational movements in any direction of the lumbar spine.  Dr. Kirkland recommended the use of an electronic muscle stimulator and heat to reduce spasms and inflammation followed by realignment.  Dr. Johnson opined that Plaintiff would need six to twelve weeks of treatment.

On September 7, 2012, Plaintiff complained of back pain with muscle spasm.  (Doc. 7, pp. 393-394).  Plaintiff reported that she was seen by Dr. Johnson two days ago.  Plaintiff reported that she smoked and drank alcohol daily.  Upon examination, Plaintiff was noted to have a normal gait.  Plaintiff was given exercises for her back and prescribed medication.

On September 12, 2012, Plaintiff was seen by Dr. Johnson.  (Doc. 7, p. 383).  Plaintiff was noted to have experienced improvement since the last visit.  Dr. Johnson noted that

Plaintiff's level of pain had diminished and that there was a definite decrease in pain with range of motion testing.  Plaintiff was to continue with conservative corrective care.

On January 22, 2013, Plaintiff was seen for a medication refill check.  (Doc. 7, pp. 389-390).  Plaintiff expressed concern about smoking cessation and reported she was taking her medication as prescribed.  Plaintiff reported that she smoked and drank alcohol daily.  Plaintiff was diagnosed with hypertension, low back pain/muscle spasm, hyperlipidemia, and insomnia.  Plaintiff was signed up for smoking cessation classes.  Plaintiff was to return in six months for a follow-up appointment.

On July 17, 2013, Plaintiff was seen for a six month follow-up appointment.  (Doc. 7, pp. 387-388).  Plaintiff reported that she was doing well on her medication but was out of her Flexeril.  Plaintiff stopped Chantix due to nightmares.  Plaintiff reported that she smoked and drank alcohol daily. Plaintiff reported some lower back pain but was noted to have a normal gait.  Plaintiff was to return for a follow-up appointment in six months.

On December 18, 2013, Plaintiff reported to Latrese Hicks, APN, that she had broken out in hives and had a scratchy throat for the past two days.  (Doc. 7, pp. 385-386).  Plaintiff reported that she experienced some relief with the use of over-the-counter allergy medicine but continued to experience a scratchy throat.  Upon examination, Plaintiff was noted to have a normal gait.  Plaintiff was diagnosed with hypertension, insomnia, hyperlipidemia and an allergic reaction.  Plaintiff was treated with prednisone.  Plaintiff was to schedule a follow-up appointment in six months.

On January 27, 2014, Dr. Alice M. Davidson, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry fifty pounds,

frequently lift or carry twenty-five pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Doc. 7, pp. 87-89).   On February 24, 2014, after reviewing the record, Dr. James Wellons affirmed Dr. Davidson's opinion. (Doc. 7, pp. 109-112).

On March 14, 2014, Plaintiff was seen for her back pain and anxiety.  (Doc. 7, pp. 481-485).  Plaintiff reported the pain was dull and located in the lower sacral area.  Standing for prolonged periods and walking made this pain worse.  Plaintiff reported that a chiropractor told her she had a herniated disc.  Dr. Larisse Tantchou noted Plaintiff had to stand for long periods of time to perform her work as a hairdresser.  Plaintiff also reported anxiety and panic attacks caused by sexual and physical abuse by a police officer.  Plaintiff reported that she was nervous about testifying at the upcoming trial.  Plaintiff requested a referral to a chiropractor and medication for her nerves.  Plaintiff was advised to stop smoking but Plaintiff reported she was not ready to quit.  Upon examination, Dr. Tantchou noted that Plaintiff had a normal gait and station; had no red, hot or tender joints; had no obvious deformities, dislocation or fracture; and had full range of motion of her neck and back.  Plaintiff was diagnosed with back pain and anxiety.  Plaintiff was referred to a chiropractor, and it was suggested that she also try physical therapy.  Plaintiff was also referred to Ozark Guidance Center.

In a letter dated March 14, 2014, Dr. Ben Lowery opined that Plaintiff had severe disc degenerative changes at L5/S1; and that there was no displaced fracture or subluxation of the lumbar spine.  (Doc. 7, p. 461).

On March 19, 2014, Plaintiff was seen by Dr. Johnson for an evaluation of her acute aggravation of thoraco-lumbar and lumbo-sacral pain. (Doc. 7, pp. 457-458). Plaintiff reported she had recently fallen on ice and had hit her back on a fence. Dr. Johnson noted there was no evidence of leg pain, numbness/tingling, or other neurologic complications. Plaintiff underwent manipulation and therapy. Plaintiff was seen by Dr. Johnson on March 26, 2014, April 2, 2014, and April 5, 2014, for manipulation and therapy.

On April 1, 2014, Plaintiff underwent a MRI of the lumbar spine which revealed multi-levels of acquired canal stenosis most pronounced at L4-5 and L5-S1 (Doc. 7, pp. 459-460). There was no evidence of focal herniated nucleus pulposus.

On April 10, 2014, Plaintiff was seen for a follow-up after her MRI of the lumbar spine. (Doc. 7, pp. 476-480). Plaintiff complained of continued back pain that was stable but very bothersome as her work as a hairdresser required long hours of standing during the day. Plaintiff also reported that she went to talk to a counselor about her PTSD and anxiety. Plaintiff was upset because the counselor told her she was not sick and did not need counseling. Plaintiff reported daily fear whenever she saw a police car. Plaintiff denied fatigue but complained of chest palpitations, back and neck pain, numbness, and anxiety. Upon examination, Dr. Tantchou noted Plaintiff had a normal gait and station, full range of motion of the neck, and decreased range of motion of the back. Plaintiff was diagnosed with lumbar spinal stenosis, anxiety, and PTSD.

On April 29, 2014, Plaintiff reported that she was still having issues with her back. (Doc. 7, pp. 472-475). Plaintiff reported a worsening of her back pain and she had not seen a

pain specialist yet. Plaintiff reported she was unable to sleep and could not work due to a worsening of her back pain. Plaintiff also felt sad and anxious. Plaintiff was noted to be working as a hairstylist. Upon examination, Dr. Tantchou noted Plaintiff had a decreased range of motion of the back with a negative straight leg raise, but tenderness of the paralumbar muscles. Plaintiff's reflexes, strength and sensation were within normal limits.

On April 30, 2014, Plaintiff was seen at Perspectives Behavioral Health Management to complete a treatment plan for depression and anxiety. (Doc. 7, pp. 443-447).

On May 27, 2014, Plaintiff presented for a consultation with Dr. Mary F. Daut. (Doc. 7, pp. 500-501). Plaintiff reported progressive low back pain that radiated into her buttocks bilaterally. Upon examination, Dr. Daut noted normal range of motion in the cervical spine and a negative straight leg raise bilaterally. Dr. Daut noted Plaintiff had a normal gait and that she was able to stand without difficulty. Dr. Daut recommended that Plaintiff be referred for a steroid injection. Dr. Daut opined that the goal was to keep Plaintiff working and off of disability.

On June 5, 2014, Plaintiff was seen by Dr. LaShundra Watson for a follow-up appointment. (Doc. 7, p. 466-471). Plaintiff reported that her blood pressure had been "doing good" and that she needed a medication refill. Dr. Watson noted that Plaintiff had been a patient at the Community Clinic but would like to change providers. Plaintiff reported daily back pain that was managed by a pain specialist. Plaintiff indicated that she had an appointment to see an orthopedic surgeon for her back. Plaintiff also reported daily fatigue and a family history of diabetes. Plaintiff denied a depressed mood. Upon examination, Dr. Watson noted a decreased range of motion in Plaintiff's back and tenderness to palpation in

the lumbar spine. Plaintiff also appeared anxious. Plaintiff was diagnosed with hypertension, chronic pain syndrome, fatigue, hyperlipidemia, and insomnia.

On June 17, 2014, Dr. Daut noted Plaintiff was being seen for a follow-up for evaluation and management of her chronic lower back pain. (Doc. 7, pp. 496-499). Plaintiff reported that the Ultram did not help much especially when she was standing at work. Plaintiff reported the gabapentin helped with the leg pain but caused tolerable morning sedation. Upon examination, Dr. Daut noted Plaintiff had tenderness to palpation of the lumbar paraspinals and a limited range of motion due to pain especially with flexion. Plaintiff maintained normal range of motion without pain in her upper and lower extremities. Dr. Daut noted that Plaintiff was functioning well and experiencing no adverse effects.

On June 19, 2014, Plaintiff was seen at Perspectives Behavioral Health Management to undergo a medical diagnostic assessment. (Doc. 7, pp. 449-455). Plaintiff reported a long standing history of anxiety symptoms. Plaintiff reported that her anxiety significantly increased about one year ago following a sexual assault perpetrated by a police officer. Plaintiff reported this incident to authorities and it was adjudicated. Plaintiff reported that since this incident she had experienced symptoms consistent with PTSD. Prior to this incident, Plaintiff had sought therapy to deal with an abusive ex-husband. Plaintiff reported that she was taking Trazadone to help her sleep. Dr. Donald Clay noted that Plaintiff was employed as a licensed cosmetologist and that she had the support of her boyfriend. Dr. Clay recommended a trial of Lexapro. Plaintiff denied experiencing muscle weakness, pain or limited range of motion. Plaintiff was prescribed medication and encouraged to diet and exercise.

On July 29, 2014, Plaintiff was seen at Perspectives Behavioral Health Management. Plaintiff reported some benefit with the use medication. (Doc. 7, pp. 509-514). Plaintiff reported that she still felt uneasy around patrols cars and officers. Plaintiff indicated that her job required a bit of people pleasing but that she could speak her mind when needed.

On August 14, 2014, Plaintiff complained of lower back pain. (Doc. 7, pp. 492-493, 521-525). Dr. Daut noted that Plaintiff had an epidural steroid injection and Plaintiff thought it helped by about twenty percent. Plaintiff reported that she was still doing physical therapy. Plaintiff reported that medication helped her pain and that she had not experienced any adverse side effects. Upon examination, Dr. Daut noted normal range of motion of the cervical spine. Plaintiff exhibited tenderness to the paraspinals with palpation and limited range of motion of the lumber spine due to pain. Plaintiff had normal range of motion of the upper and lower extremities with no pain on motion. Dr. Daut noted that Plaintiff had a normal gait and station and was able to stand without difficulty.

On August 22, 2014, Plaintiff was seen at the Fayetteville Mental Health Clinic for a medication management appointment. (Doc.7, pp. 515-518). Plaintiff reported that she was feeling considerably better. Plaintiff reported experiencing some side effects with the Lexapro but after she started breaking the pill in half and taking it she was doing better. Plaintiff also reported that the individual that assaulted her had moved to Florida and would never be able to work in law enforcement. Plaintiff was noted as being pleasant and in good spirits.

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th

Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet

or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.    Discussion:**

Plaintiff argues the following issues on appeal: 1) whether the ALJ committed reversible error when he found Plaintiff's back and arm problems did not meet a Listing, while finding her medical objective evidence of record showed Plaintiff had significant limitations as a result of her back and arm injuries; and 2) whether the ALJ committed reversible error when he returned the Plaintiff to less than a full range of light work, when the RFC did not include all physical impairments and mental impairments documented in the medical evidence.

**A.    Plaintiff's Impairments:**

Plaintiff appears to argue that the ALJ erred in determining Plaintiff's severe impairments.

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c).  While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted).  To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p.  The claimant has the burden of proof of showing

13

he suffers from a medically-severe impairment at Step Two.   See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe.  See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). The Court finds the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant time period.

**B.      Listing of Impairments:**

Plaintiff argues that the ALJ erred by failing to determine that Plaintiff's impairments met a Listing of Impairments pursuant to 20 CFR Part 404, Subpart P, Appendix 1.

The burden of proof is on the Plaintiff to establish that her impairments meet or equal a listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493

U.S. at 531 ("a claimant ... must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment"). In this case, the ALJ explicitly found that no treating or examining physician mentioned findings equivalent in severity to the criteria of a listed impairment, and that the medical evidence does not show medical findings that are the same or equivalent to a listed impairment.

After reviewing the entire evidence of record, the Court finds there is sufficient evidence to support the ALJ's determination that Plaintiff's impairments did not medically equal a Listing.

### C.    Subjective Complaints and Symptom Evaluation:

We now address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that

[a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record reveals that in a Function Report completed on December 23, 2013, Plaintiff indicated

that she was able to take care of her personal needs, but had difficulty drying her hair with her left arm; to take care of her small dog; to prepare simple meals; to do light household cleaning; to drive a car, noting some left arm pain; to shop for food and clothes; to take care of her finances; to read and watch television; and to go out to eat or to the movies sometimes. (Doc. 7, pp. 271-278). At the administrative hearing held on October 8, 2014, Plaintiff testified that she continued to work as a cosmetologist for about four hours a day. (Doc. 7, p. 43). Plaintiff explained that her pain sometimes caused her to turn customers away and that she no longer worked with long hair or did perms or blowouts due to her arm and back pain. (Doc. 7, p. 47). Plaintiff testified that she was responsible for purchasing her supplies for work and for paying her own personal taxes. (Doc. 7, p. 45).

With respect to Plaintiff's upper extremity impairment, a review of the record revealed that Plaintiff underwent a surgical procedure after breaking her arm in June of 2011. Subsequent medical records revealed that Plaintiff's bone healed correctly. A review of the medical records revealed that Plaintiff failed to report continued problems with her arm. Treatment notes during the relevant time period also indicated that Plaintiff had full range of motion of her upper extremities with normal muscle tone and strength. (Doc. 7, pp. 494, 498, 502).

With regard to Plaintiff's alleged back impairment, the ALJ found that while Plaintiff may indeed have some limitations, the evidence did not support a finding of disability during the time period in question. While Plaintiff may indeed have experienced some degree of pain due to her back impairment, the Court finds substantial evidence of record supporting the ALJ's finding that Plaintiff did not have a disabling back impairment during the time period in question. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's

determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

With respect to Plaintiff's alleged mental impairments, the record revealed that Plaintiff did not allege a mental impairment in her applications for benefits. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed). A review of the record also failed to establish that Plaintiff sought on-going and consistent treatment from a mental health provider during the time period in question. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity during the time period in question. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**D.    ALJ's RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC." Id.

In finding Plaintiff able to perform light work with limitations, the ALJ considered Plaintiff's subjective complaints, the medical records, and the evaluations of the non-examining medical examiners. Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on her activities that would preclude performing the RFC determined during the relevant time period. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

### E.    Past Relevant Work:

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes the performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1.  The actual functional demands and job duties of a
> particular past relevant job; or

> 2.   The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); <u>Martin v. Sullivan</u>, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

The Court notes in this case the ALJ relied upon the testimony of a vocational expert, who after listening to the ALJ's proposed hypothetical question which included the limitations addressed in the RFC determination discussed above, testified that the hypothetical individual would be able to perform Plaintiff's past relevant work. <u>See</u> <u>Gilbert v. Apfel</u>, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a cosmetologist during the relevant time period.

**V.    Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of April, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE